**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IRA MCCRAY, and DEMETRIUS JONES, individually and on behalf of others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 1:10-CV-2821-WBH |
| | ) | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS MOTION FOR CONDITIONAL CLASS CERTIFICATION

Against a backdrop of policies and procedures requiring employees to report and be paid for all work hours, including time spent logging onto computers, named Plaintiffs Ira McCray ("McCray") and Demetrius Jones ("Jones") allege what they claim is a uniform policy of Cellco Partnership d/b/a Verizon Wireless ("VZW" or the "Company") of not paying overtime occurring before and after shifts, and during meal breaks. With little more than boilerplate declarations signed at the outset of this case, they claim that it was "recommended" to them during training to come to work early to be prepared to start their shift. On the basis of these bare-bones assertions, Plaintiffs request conditional certification of a class that would include all customer service representatives in Georgia.

This Court should deny Plaintiffs' request. To begin with, Plaintiffs cannot possibly prove that they are "similarly situated," 29 U.S.C. § 216(b), to even the other employees at the Alpharetta call center. Moreover, Plaintiffs' failure to provide any evidence from Sanctuary Park (or anywhere else in Georgia) precludes them from obtaining the statewide notice they seek. Even within the Alpharetta center, Plaintiffs cannot show they are similarly situated to any other employee. At most, Plaintiffs provide evidence of individual deviations by some managers at a single work location. Plaintiffs offer no evidence of a pattern or practice of such violations in Alpharetta, and certainly not at the Sanctuary Park call center.

Moreover, Plaintiffs' claims are hopelessly individualized, making judicial notice both improper and an exercise in futility. Plaintiffs themselves admit that a proper

analysis of the claims in this case will require the analysis of countless time-stamped documents for each employee to determine whether any off-the-clock work was performed. Given that Plaintiffs admit that their actions violated clear written policies, the Court will then have to analyze individual time records on each day to determine whether an individual may have misreported their work time, and then for each instance the specific facts surrounding each misrepresentation, the reasons for the misrepresentation, what – if anything – managers knew, and other individual facts surrounding each instance.  Finally, given Plaintiffs' failure to identify anything more than a few managers providing allegedly incorrect instructions to employees, an individualized analysis will have to be conducted to determine what, if anything, each supervisor told each class member during the relevant limitations period. In short, the experience of any individual employee, on any particular day, provides no evidence that can be extrapolated to the entire class. This is simply not the basis of a collective action.

## RELEVANT FACTUAL BACKGROUND

## I.    VZW'S OVERTIME POLICY AND THE REPORTING OF OVERTIME

VZW policies expressly provide that non-exempt employees will be paid for all hours worked and will receive overtime when they work more than 40 hours in a workweek. (Ex. 1-C&I) [1].  Those policies also provide that employees will be paid for all work time, including time spent reading e-mails and logging onto computers. (Ex. 1-G, J, & O).

---

[1] VZW will file its confidential policies in Ex. 1 and related deposition transcripts under seal once the Court grants the pending Consent Motion to File Under Seal.

VZW's policies not only require the payment of overtime as a general matter, they expressly provide that employees will be fully compensated for any hours worked before or after shifts, or during breaks. (Ex. 1-C, G, F, & J). This includes any situation where an employee performs work on his "own" time. (Ex. 1-J & G). Importantly, although VZW policies inform employees not to log onto computers before their scheduled starting time (Ex. 1-B, p. 9; Ex. 1-O), VZW policy also expressly provides that an employee must be fully compensated if he logs onto a computer before his shift.  (Ex. 1-J & G).

To account for employees' overtime, including any pre-shift overtime, VZW uses a timekeeping system known as VZW Time. (Ex. 3, Stratton Dep. 17). This system relies on employees to properly report all of their working time to management to allow them to be paid. (Ex. 3, Stratton Dep. 17, 21, 30-31; Ex. 1-G, H, M). Employees record their actual start and stop times – to the minute – for each day into the system. (Ex. 3, Stratton Dep. 30-31; Ex. 1-F, p. 12-17).  VZW's Code of Conduct is clear that employees are required to create entirely accurate records, including timesheets, and that failure to do so violates the Code. (Ex. 1-D, p. VZW 00136 & 00180).

Consistent with this duty, if an employee works additional hours, before or after his scheduled shift, VZW expects and requires the employee to report this time in the VZW Time system. (Ex. 3, Stratton Dep. 30-31, 89; Ex. 1-G). To ensure that employees do so, VZW reinforces this duty in regular training programs, including classes taken by Plaintiffs themselves. (Ex. 1-A, E, F, G, H, J, K, & L). This culture is reinforced by

managers throughout the organization. (Ex. 3, Watkins Dep. 95-96, 101-03). Because it is not possible for supervisors to observe their employees at all times, (Ex. 2, p. 1, Ex. 3), VZW relies on the employees themselves to accurately report their time, as they are in the best position to know their actual hours. (Ex. 3, Stratton Dep. 17, 30-31).

For their part, the Named Plaintiffs, and almost every one of their witnesses, admit that they are (or were) fully aware of their obligation to report overtime for payment and that they did so during their employment. (Ex. 2, p. 2, Ex. 3). McCray, Jones, and almost all of their declarants admit they regularly used VZW Time to report overtime hours, and that they received pay when they did.  (*Id.*; Ex. 1-N).  Nevertheless, for reasons known only to them, they chose to misreport their time. (*see, e.g.* Ex. 3, Jones Dep. 167-70 (admitting his "decision to do something that was contrary to company policy.")

## II.    THE ALPHARETTA FACILITY AND ITS VARIOUS TEAMS

VZW's Alpharetta Place call center, where the Named Plaintiffs and all of the declarants worked (or work), is divided into multiple areas on three floors. (Ex. 3, Watkins Dep. 20-22). Within each area, individual teams of approximately 12-13 CSRs work for a supervisor, who reports to an Assistant Director, who reports to the Center Director. (Ex. 3, Watkins Dep. 30-32, 34, Ex. 5, L. Richardson Dec. ¶ 4).

The Named Plaintiffs have only worked in one position, Rep- Customer Service, and their witnesses worked in two additional positions:  Sr. Rep.–Customer Service; and

Coordinator–Customer Service.[2] Employees in these positions perform different customer service tasks.  (Ex. 5, L. Richardson Dec. ¶ 4). Sr. CSR's perform tasks such as escalations, work the "follow-up queue" while in an off-line state, and handle "supervisor" calls on a much more frequent basis than other representatives. (Ex. 3, Watkins Dep. 71-73). Coordinators perform more complex tasks and work with different customers than Reps and Sr. Reps. (Ex. 3, Watkins Dep. 77-80). Other employees of the call center work in a variety of positions that do not involve handling incoming customer service calls at all. (Ex. 3, Watkins Dep. 53, 60, Ex. 5, Belton Dec. ¶4; T. Williams Dec. ¶5).

VZW also operates a second call center, located at Sanctuary Park, Georgia. (Answer ¶3). The Director and management team of the Sanctuary Park call center is entirely separate from the Alpharetta call center. (Ex. 3, Watkins Dep. 65-67). Plaintiffs, notably, have offered no evidence surrounding the practices or experiences of <u>any</u> employees at the Sanctuary Park call center. In fact, Plaintiffs admitted that they were not "familiar with the practices at any other call center" other than Alpharetta, or any positions other than their own.  (Ex. 3, Richardson Dep. 44; see also Ex. 2, p. 3).

As the Plaintiffs and their witnesses admit, each supervisor in Alpharetta had his own individual practices and procedures. (Ex. 2, p. 4, Ex. 3). Thus, each of the various teams at the Alpharetta call center operated under different practices, which

---

[2] Plaintiffs use the term CSR to represent all three positions, although no such title exists at VZW.  Defendants will as well, for ease of reading. Ms. Sims' position is excluded, as she refused to attend her deposition.  Regardless, her position was different from that of the Plaintiffs.  (Ex. 3, Richardson Dep. 64-65, Ex. 5, T. Williams Dec. ¶5).

supplemented VZW's general rules and procedures. Moreover, individual managers'

practices and instructions with respect to issues such as exception time and booting up

computers and computer programs also varied (Ex. 2, p. 5, Ex. 3). While Plaintiffs claim

that they were informed, -- usually by unnamed individuals during unspecified

conversations -- that they were to boot up computers prior to their shifts, the testimony of

supervisors shows that such instructions were not given, and rather, managers told

employees to follow VZW's written policies.  (Ex. 2, p. 6, Ex. 4; Ex. 3, Watkins Dep. 85-

86, 90-92, 95-96, 101-02; Ex. 1-B, p.9.) The instructions given by all of the higher level

managers of the Alpharetta center, which applied broadly to employees, were wholly in

line with VZW policies.  (Ex. 3, p. 6, Ex. 4 and Watkins Dep. 101-03). Plaintiffs'

evidence, limited to a handful of first-line supervisors, is inherently restricted by the fact

those supervisors only managed a few employees on a given team.  (Ex. 3, Watkins Dep.

30).

## III.   PROCEDURAL HISTORY

Plaintiffs initiated this action on September 7, 2010, about two years after each left

VZW.  They proposed a class that would include "individuals who were, or are,

employed by Defendant in customer service and similar positions in its Georgia call

centers...."  (Complaint, ECF No. 1, at ¶ 9.) Prior to the Court issuing a discovery order,

Plaintiffs filed the instant Motion for Conditional Class Certification on December 17,

2010, refining the class to include individuals handling inbound customer calls. (ECF No.

39, p.6). Over Plaintiffs' objection, this Court extended the response date for Defendant's Opposition to and including March 4, 2011, permitting discovery to proceed in the interim. (ECF No. 55). VZW sought to depose each of Plaintiffs declarants, but Mr. LaCroix and Ms. Sims failed to appear for their properly noticed depositions and have not made themselves available since.

Despite claiming that Plaintiffs and their alleged class are similarly situated, Plaintiffs and their witnesses instead make a wide variety of individual claims. Some make claims for alleged straight time compensation (despite no such remedy existing under the FLSA). (Ex. 3, Anderson Dep. 342-44, Booth Dep. 271-72). Some, but not all, employees make claims for working during unpaid breaks. (e.g. Ex. 3, Booth Dep. 140, *but see* Richardson Dep. 313; Hudson Dep. 141). Some claim extensive time performing required follow-ups, (e.g. Ex. 3, Anderson Dep. 162-65, Hill Dep. 20-21, 240, 343), while others do not. (e.g. Ex. 3, McCray Dep. 131, 164-65, Booth Dep. 129, Jones Dep. 143-44, 159-60, 203-04, Hudson Dep. 152-54). Some employees claim that a supervisor required them to stay after shifts (e.g. Ex. 3, Hill Dep. 246), while others admit they were never required to do so. (e.g. Ex. 3, Gadson Dep. 227, 229, Richardson Dep. 192, 208-09). And, experiences also differ greatly in magnitude, as Kessa Hudson admitted. (Ex. 3, Hudson Dep. 300) (admitting that her claim was "very minute" compared to others).

## APPLICABLE LEGAL PRINCIPLES

Collective action proceedings are warranted only if the evidence demonstrates that the judicial system would benefit from "efficient resolution in one proceeding of common issues of law and fact…" *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The FLSA permits plaintiffs to proceed collectively only where the plaintiffs meet their burden of demonstrating that the employees they seek to represent are "similarly situated" to plaintiffs and desire to opt-into the action. 29 U.S.C. § 216(b); *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). To demonstrate that potential class members are similarly situated, the plaintiffs must show that the employees they seek to represent are similar to plaintiffs with respect to their job requirements and pay provisions. *Id., see also Saxton v. TitleMax of Ala., Inc.*, 431 F.Supp.2d 1185 (N.D. Ala. 2006).

Courts in the Eleventh Circuit generally adopt a two-stage approach for certifying FLSA classes, with an initial "notice stage" during which the court makes a conditional determination of whether Plaintiffs are potentially "similarly situated" to those they seek to represent. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). While the court may use a lenient standard at this first stage where little or no discovery has occurred, when the record is more developed - such as through deposition and extensive affidavit testimony - courts in the Eleventh Circuit typically apply a stricter

standard at the initial stage. *Williams v. Accredited Home Lenders, Inc*., 2006 U.S. Dist.

LEXIS 50653, at *11-12 (N.D. Ga. July 25, 2006) (disregarding two tier approach where

defendants had taken depositions of the named and select opt-in plaintiffs); *Brooks v.

BellSouth Telecommunications, Inc.*, 164 F.R.D. 561 (N.D. Ala. 1995) (3 months of

discovery required consideration of entire record); *Ledbetter v. Pruitt Corp.*, 2007 U.S.

Dist. LEXIS 10243 (M.D. Ga. 2007) (more searching standard of review applies when

the parties have engaged in discovery); *Davis v. Charoen Pokphand USA, Inc.*, 303 F.

Supp. 2d 1272, 1276 (M.D. Ala. 2004) (same); *White v. Osmose, Inc.*, 204 F.Supp.2d

1309, 1313 n.2 (M.D. Ala. 2002); *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265 (M.D. Ala.

2004). This more rigorous standard is appropriate because it would be a waste of judicial

and other resources to conditionally certify a class that will inevitably be decertified.  *Id.*

Regardless of the standard used, "[t]he power to authorize notice must, however,

be exercised with discretion and only in appropriate cases." *Haynes v. Singer Co*., 696

F.2d 884, 886 (11th Cir. 1983). Even where a court chooses to employ a "fairly lenient

standard" in determining whether a class of similarly situated individuals exists, this

lenient burden does not, and cannot, equate to no burden at all. *See Parrilla v. Allcom

Const. & Installation Servs., LLC*, 2009 WL 1456442, at *1 (M.D. Fla. May 22, 2009)

(burden "is not 'invisible' and cannot be based on the conclusory allegations of a few

employees.") (internal citations omitted). Absent this burden, every FLSA class

allegation would be subject to certification. *See Smith v. Sovereign Bancorp, Inc.*, 2003

U.S. Dist. LEXIS 21010, at *7 (E.D. Pa. Nov. 13, 2003) (permitting plaintiffs to proceed on the basis of allegations alone would "render preliminary class certification automatic, as long as the Complaint contains the magic words: 'Other employees similarly situated.'"); *see also Songer v. Dillon Resources, Inc.*, 569 F. Supp. 2d 703, 706-07 (N.D. Tex. 2008) (noting attorneys' and the courts' "responsibility" to refrain from "stirring up unwarranted litigation") (internal cite and quotes omitted); *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (the court must ensure that the employer is not "unduly burdened by a frivolous fishing expedition"). Thus, a motion for notice should be denied where, as here, the evidence demonstrates that putative class members are not similarly situated with respect to the plaintiff's allegations. *See Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) ("It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that . . . class members are not similarly situated.").

## **ARGUMENT**

## I.     **THE PUTATIVE CLASS MEMBERS ARE NOT SIMILARLY SITUATED**

In this case, putative class members are not similarly situated with respect to Plaintiffs' claims, and notice would not serve purposes of efficiency and judicial economy. Plaintiffs seek to represent a class containing multiple, unspecified positions, but offer no evidence common to any of those positions. Instead, they rely on the "fairly lenient" burden commonly applied in cases where there has been no discovery, and invite this Court to engage in what will likely be a fruitless endeavor of approving notice.

### A.   Off-the-Clock Work Is Not A Uniform Requirement at the Alpharetta Call Center

Although a plaintiff does not need to show that the job positions or duties of the individuals he seeks to represent are identical to his, he must show a similarity beyond generalized allegations that the class members worked in the same general field or the same location and were underpaid. *See Robinson v. Dolgencorp, Inc.*, 2006 U.S. Dist. LEXIS 85471, at *23-24 (M.D. Fla. Nov. 13, 2006); *Rodgers*, 2006 WL 752831, at *5; *Rappaport v. Embarq Mgmt. Co.,* 2007 U.S. Dist. LEXIS 92869, at *10-11 (M.D. Fla. Dec. 18, 2007). Mere allegations of allegedly isolated instances of underpayment simply do not discharge plaintiffs' burden when seeking conditional certification. Thus, "the mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern or practice without showing that the violations were more than sporadic occurrences." *Ledbetter,* 2007 U.S. Dist. LEXIS 10243 at *15.  Similarly, Judge Thrash found in *Williams* that alleged violations by a handful of managers did not show that plaintiffs were similarly situated to a broad class of employees. *Williams,* 2006 U.S. Dist. LEXIS 50653 at *15].

Rather, a more convincing showing of commonality is necessary, especially when the proposed class spans multiple jobs and more than a single work location. For example, in *Rodgers*, the court denied conditional certification of a class of employees who worked across five job titles because the plaintiff had not shown that he was similarly situated to potential class plaintiffs with regard to their job requirements.

*Rodgers*, 2006 WL 752831, at *1 & *6. Specifically, the declarations submitted by the plaintiff and putative plaintiffs did not sufficiently describe their job duties to allow for an evaluation of similarities, as the mere fact that all of the proposed class members clocked in and out of a company computer failed to make them similarly situated, particularly since they worked in three different locations and were supervised by different managers. *.Id.* at *5*; see also Rappaport*, 2007 U.S. Dist LEXIS 92869, at *7 (denying certification where the class spanned multiple work locations, positions, work groups, and managers).

Here, Plaintiffs have not even attempted to make a showing that their positions are similar to those of the proposed class members in Alpharetta, not to mention those in Sanctuary Park. Plaintiffs provide no description of the numerous jobs held by the employees they seek to represent. Rather, they vaguely describe their own jobs as handling inbound customer service calls, and then state, without further support, that other employees are similarly situated. They fail to describe the job duties or experiences of the various positions they seek to represent.  They fail to offer this proof because Plaintiffs and their witnesses admit that they have no personal knowledge of employees working in positions other than their own, for supervisors other than their own, and in call centers other than their own. (Ex. 2, pp. 3, 7, Ex. 3). And, tellingly, they fail to provide any evidence of the practices and expectations of the various supervisors who managed the other putative class members.

Plaintiffs have failed to provide any evidence at all to show that they are similar to any employee who did not the same job duties in their job titles, for their same supervisors, at a single call center located in Alpharetta, Georgia. Absent such proof, notification is inappropriate. *Coots*, 2006 U.S. Dist. LEXIS 71321, at *7 (refusing to certify a class where plaintiff failed to describe his job duties <u>and the job duties of other potential plaintiffs</u>) (emphasis added). Rather, in such circumstances, courts routinely decline to grant conditional certification. *See, e.g.,  Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363 (M.D. Ala. 1999) (denying conditional certification where employees worked at different locations, for different managers, with different working conditions); *Brooks v. Bellsouth Telecomm., Inc.,* 164 F.R.D. 561, 569 (N.D Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997) (denying the issuance of notice where employees worked in separate departments and under separate supervisors); *Cartner v. Hewitt Assocs.,* 2009 U.S. Dist. LEXIS 126969, at *11-12 (M.D. Fla. Mar. 31, 2009) (finding it "far from clear that putative class members hold similar positions as Plaintiffs" where the named plaintiffs worked on only three of the employer's thirty-one different teams).

## B.    No Common Written Policy

Rather than addressing the similarly situated analysis with any detail, Plaintiffs seem to suggest that the Court can ignore this critical requirement by simply claiming (without any proof) that Defendant engaged in the common practice of requiring employees to work off the clock. (*See* Motion ("Mot.") at 6-8; Ex. 2, p. 8). Not only does

the Eleventh Circuit clearly require that Plaintiffs establish that they and members of the proposed class are similarly situated, but the record belies any allegation that VZW had a common policy of requiring employees to work off the clock without pay.

Plaintiffs cannot establish similarity simply by alleging that VZW had a common plan or policy to deny overtime payments to its employees. *Cohen*, 554 F. Supp. 2d at 1334 ("Other than the fact that they allege that others were not paid overtime wages, Plaintiffs fail to provide any factual allegations as to how they are similarly situated with other employees through a description of their respective job duties and those done by others who were 'inside sales' representatives."); *Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) ("[G]eneral allegations that the employer violated the FLSA are insufficient [to permit conditional certification]…") (internal citations omitted); *Reed v. Mobile Cnty. Sch. Sys.*, 246 F. Supp. 2d 1227, 1233 (S.D. Ala. 2003) (refusing to grant notice when plaintiffs alleged broadly that defendant had a practice of not paying overtime, "regardless of how the failure to pay occurred."). Moreover, Plaintiffs have not provided any evidence of a written policy and have not even pointed to a uniform method by which Plaintiffs were allegedly deprived of wages. (*See generally* Mot.) Instead, as explained in Defendant's Notice of Objection filed contemporaneously herewith, Plaintiffs rely on inadmissible evidence and innuendo to raise the ghost of a policy that simply does not exist.

Plaintiffs' evidence that VZW maintained a common policy of instructing employees verbally to violate the Company's written policies and procedures consists of allegations that unidentified individuals "recommended to them during training" that they come in early to prepare to take calls. (Ex. 2, p. 9). In their depositions, however, these same witnesses admitted that they were never told that they could not be paid for this time (Ex. 2, p. 10, Ex. 3), or that they could not report the time on their timesheets. (Ex. 2, p. 11, Ex. 3). More importantly, none of the declarants testified that they attempted to record this time on their time sheets but had it regularly denied (Ex. 2, p. 12, Ex. 3), and none of the declarants claimed that they were ordered to report to work early without pay. (Ex. 2, p. 13, Ex. 3). Rather, at best, the witnesses pointed to ambiguous statements requiring them to do their best to get their jobs done, often made by unidentified supervisors at unidentified times, with no other corroborating facts. (e.g. Ex. 3, Anderson Dep. 168-69).

The evidence offered by VZW directly refutes these unsubstantiated allegations. Other CSRs at the Alpharetta call center testify that they were consistently told to report, and be paid, for all of their working time, and supervisors never instructed an employee to perform work before their shift without pay. (Ex. 2, p. 14, Ex. 4, 5). Further, Associate Directors, in charge of multiple teams, explained their instructions that employees were to be paid for all working hours, including time spent logging into computers.  (Ex. 2, p. 15, Ex. 5, Ex. 3, Watkins Dep. 92, 102-03).  Moreover, it is clear that supervisors were

never instructed, or permitted, to tell anyone to work off the clock or to be ready to take calls at the start of a shift.  (*Id*.). VZW's written policies are, expectedly, consistent with these declarations. (e.g. Ex. 1-B, p. 9; Ex. 1-G & J). As Plaintiff Jones admitted, "if [he] had submitted that time on [his] weekly time sheets, [he] would have been paid..."  (Ex. 3, Jones Dep. 173).  This evidence "indicate[s] only that some employees may have misunderstood [the employer's] policies, or that their supervisors failed to enforce those policies."  *Brooks & Russo v. BellSouth Telecommunications, Inc.*, 2009 U.S. Dist. LEXIS 20552 at *27 (N.D. Ga. 2009). Also, just as in *Brooks*, Plaintiffs' empty assertions that they feared discipline for following Company policy is unavailing. *See Brooks* at *28-*30. It is undisputed that none of the Plaintiffs were disciplined for following VZW's written timekeeping and overtime policies, and neither the Plaintiffs nor their witnesses were able to identify any employee who was disciplined for following those policies. (Ex. 2, p. 16, Ex. 3)

Absent a common practice of requiring employees to work off the clock, Plaintiffs have shown, at best, that they, unlike their peers, may have either misunderstood the communications of their supervisors, acted unilaterally in contravention of VZW's policies, or received an isolated improper instruction. In a strikingly similar case, *Heath v. Hard Rock Café Int'l, Inc.,* 2010 U.S. Dist. LEXIS 107440, at *15 (M.D. Fla. Aug. 31, 2010), the court held that, because defendant had demonstrated that the alleged "common" practice at issue was implemented differently across supervisors and

locations, such decentralized decision-making regarding the alleged offensive conduct weighed against issuing notice. Similarly, the declaration testimony and written policies offered by VZW, as well as the deposition testimony of Plaintiffs and putative opt-in plaintiffs themselves, proves unequivocally that there was no common policy of pressuring or ordering employees to work off-the-clock without compensation. Conditionally certifying a class in such a situation would be improper.

### C.    Plaintiffs' Limited Evidence Establishes No Common Condition

Plaintiffs' limited evidence does not address facility-wide practices at all, but rather just the few supervisors and positions in which they worked, all of which are limited to the Alpharetta call center. Particularly in the face of VZW's showing, this is insufficient to support any claim that employees facility-wide, or across multiple facilities, are subject to any requirement to work overtime without compensation. *See*, *e.g.*, *Wacker v. Personal Touch Home Care, Inc*., 2008 WL 4838146, at *4 (E.D. Mo. Nov. 6, 2008) ("Where there is no evidence of a company-wide policy, company-wide certification is inappropriate.").

As discussed *supra* at 14-16, Plaintiffs have absolutely no common documentary evidence to support their claims that they were required to work off the clock without compensation. More importantly, the declarants and the Plaintiffs themselves, admit that they have no idea what policies and practices prevailed outside of their own teams, including at different call centers or applied to different positions. (Ex. 2, p. 3, Ex. 3).

Further, each admitted that they had no idea what hours, if any, other employees recorded on their time sheets. (Ex. 2, p. 17, Ex. 3). Plainly, these individuals can provide no probative evidence beyond their own unique situations. *See Hinojos v. Home Depot, Inc.*, 2006 WL 3712944, at *2 (D. Nev. Dec. 1, 2006).

Moreover, Plaintiffs offer little substance to back even their own allegations. Instead, Plaintiffs rely in large part on unspecified instructions given by unspecified managers in unspecified meetings. (Ex. 2, p. 18, Ex. 3). Plaintiffs and their witnesses provided little more detail in their depositions.  Many deponents could only refer to general conversations that happened at some point during their employment, but without <u>any</u> corroborating details. (*See, e.g.* Ex. 3, Richardson Dep. 84, 91-92, 101-02). In fact, the lack of corroboration even between witnesses is striking. While Plaintiff McCray testified that he and other employees, including Alycia Richardson, complained to supervisors about logging into computers before their shifts, (Ex. 3, McCray Dep. 74). Ms. Richardson flatly denied ever making a complaint to supervisors.  (Ex. 3, Richardson Dep. 105, 109-10).

In sum, Plaintiffs' bid for conditional certification fails at the threshold:  they want to certify a class on an off-the-clock overtime claim, yet they have made no showing that the putative class is subject to a uniform off-the-clock overtime requirement; and the evidence indisputably shows that it is not. Plaintiffs have failed to support their

contention that Georgia CSRs are similarly situated for purposes of their claims, and, for this reason, the Court should deny the Motion.

## II.   PLAINTIFFS' CLAIMS CAN ONLY BE ADJUDICATED THROUGH AN INDIVIDUAL INQUIRY

Attempting to adjudicate Plaintiffs' clearly individualized claims on a class-wide basis would be utterly unmanageable. As a result, class certification would be a fruitless effort, and a waste of scarce judicial resources at best. *See*, *e.g.*, *West v. Border Foods, Inc.*, 2006 WL 1892527, at *7 (D. Minn. July 10, 2006) ("neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper").

### A.   Plaintiffs' failure to allege and prove any common policies requires individualized analysis.

As explained above, Plaintiffs proffer nothing more than anecdotal claims that individual managers <u>violated</u> VZW corporate policy through individual and unauthorized actions. In such cases, courts rightly deny notice, since the claims of putative class members amount to individualized grievances, unbound by an overarching corporate policy or directive, and thus class member claims could not be efficiently resolved in one action. *See*, *e.g.*, *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007) (denying notice where "there is little indication . . . that the FLSA violations alleged by plaintiffs were anything other than unilateral acts by a few 'rogue' managers"); *West*, 2006 WL 1892527 at *9 (denying notice, noting that "the alleged violations are contrary to Defendants' official written policy, which precludes . . . off-the-clock [work]");

*Salinas v. O'Reilly Auto., Inc.*, 2005 WL 3783598 at *6 (N.D. Tex. Nov. 17, 2005) (denying notice where plaintiff's evidence "merely shows that a handful of . . . managers committed possible FLSA violations in a variety of different ways"). This Court should reach the same conclusion.

The plain starting point of this analysis is Plaintiffs' concessions in their depositions that VZW maintains express, lawful policies <u>requiring</u> compensation for the very work at issue in this case, including time spent logging in to computers, as well as any work performed outside an employee's regular work hours. These specific policies are reinforced to managers by HR, and in regular training sessions attended by employees, including <u>each</u> of the Plaintiffs and declarants. (Ex. 2, pg. 19, Ex. 4; Ex. 1-A, O, G, J). Plaintiffs' evidence of contrary instructions by individual supervisors does nothing to refute the policies.  Rather, Plaintiffs and their witnesses are limited to the very type of claims that courts find insufficient to support class notice: anecdotal claims, limited to their own circumstances, that certain managers would not permit certain CSRs to record and receive compensation for time worked. *See, e.g., Seever*, 528 F. Supp. 2d at 173-74; *West*, 2006 WL 1892527 at *9; *Salinas*, 2005 WL 3783598 at *6. Such varied claims cannot be efficiently adjudicated in a single action, and they do not justify conditional certification. *See Hoffmann-La Roche*, 493 U.S. at 173-74.

**B.     Plaintiffs' Timesheet Falsification Requires Individualized Analysis**

Plaintiffs' admitted falsification of their time sheets, on a daily basis, also precludes certification. An employee claiming to have worked off-the-clock must prove, among other things, that he or she actually preformed uncompensated work and that the employer knew, or should have known about it. *See, e.g.*, *Hertz v. Woodbury County,* 566 F.3d 775, 781 (8th Cir. 2009); *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). Proving this knowledge in cases where employees falsified timesheets requires individualized analyses of each individual supervisor's alleged knowledge at any given time. *See, e.g. Hertz*, 566 F.3d 775, 781-82 (rejecting plaintiffs' contention that employer should have "weed[ed] through non-payroll . . . records to determine whether or not its employees were working beyond their scheduled hours"); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (finding "no evidence that [the employer] knew or should have known that [plaintiff] was giving false information to conceal" her purported off-clock work); *Nero v. Hosp. Auth.*, 86 F. Supp. 2d 1214, 1232 (S.D. Ga. 1998) (concluding that the employer had "no reason . . . to suspect that [plaintiff] had not reported all of her hours"). This analysis is complicated by the fact that a heightened burden of proof applies when employees affirmatively falsify their timesheets. *Seever,* 528 F.Supp.2d at 170 (requiring specific proof of off-clock work); *Kuebel v. Black & Decker Corp.*, 2010 U.S. Dist. LEXIS 46533, *35-39 (W.D.N.Y. 2010) (same).

Here, it is undisputed that Plaintiffs and their witnesses completed timesheets reporting overtime hours, and were paid for that time as a result. (Ex. 3, Hill Dep. 334

(paid for overtime "plenty of times"); Ex. 2, p. 20; Ex. 1-N). Now, those same individuals claim that their managers should have known they were lying, despite the fact that supervisors do not have personal knowledge of each employee's work activities on a given day. But, as one of Plaintiffs' witnesses admitted, there was "no way anybody would know that [she] chose not to report" her overtime. (Ex. 3, Hudson Dep. 188; *see also* Gadson Dep. 142; McCray Dep. 142 ("Verizon could not have known the number of hours worked" unless he reported it or was logged into a phone)). This analysis, then, will require exactly the type of individual, case by case analysis that is anathema to a collective action.

### C.   Proving Plaintiffs' Claims Will Require Individualized Analysis

Further, by Plaintiffs' own admissions (Ex. 6, Jones Rogs. p. 3-4; McCray Rogs. p. 3-4, Ex. 2, p. 21, Ex. 3), in order to prove their claims, Plaintiffs' will need to review daily, time-stamped computer records and phone records, among other records, to determine when, if at all, alleged off the clock work occurred. This is the case because, as Plaintiff McCray admits, "any off-the-clock work that might have been performed would vary by each individual." (Ex. 3, McCray Dep. 200). However, as Judge Thrash recently explained in a strikingly similar case, such an analysis is contrary to the nature of a collective action. *Williams*, 2006 U.S. Dist. LEXIS 50653. In *Williams*, employees alleged, in cookie cutter declarations similar to those submitted here, that they were not compensated for unreported overtime hours, and that they submitted false timesheets

because of supervisory instruction. *Id*. at *5-6. The court denied conditional certification, finding that individual analyses predominated.  The court found that because plaintiffs alleged that individual managers violated company policy, "every employee must testify about his awareness of the overtime policy, and his violation of that policy – and whether it was compelled by his or her branch manager. In other words, there must be a fact-specific, individualized inquiry into each Plaintiff's day-to-day activities."  *Id.* at *13-14. Such an individualized analysis of time stamped records for each individual would make the class "utterly unmanageable" and precluded certification.  *Id.* at *16.

Similarly, in *Ledbetter*, the off-clock claims turned on the issue of whether employees worked through meal breaks. The court found that such claims could not be adjudicated in a collective action "because each claim will need to be established with an individualized analysis of the specific minimum wage and overtime compensation violations that may have occurred against the individual employee."  *Id.* at *16. This fact alone required that certification be denied, because "[s]uch an analysis runs directly counter to 'the economy of scale' envisioned by collective treatment of similarly situated employees under 216(b) of the FLSA."  *Id.*; *see also Brooks & Russo v. BellSouth Telecomm., Inc.*, 2009 U.S. Dist. LEXIS 20552 (N.D. Ga. 2009) (individualized variations from a company policy were not subject to certification).

In fact, courts regularly deny conditional certification in cases such as this, where individualized inquiries into whether employees worked any overtime and if their

manager knew or should have known. *Hinojos v. Home Depot, Inc.*, No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434, at *8-9 (D. Nev. Dec. 1, 2006); *see also Reed v. County of Orange*, 266 F.R.D. 446, 462 (C.D. Cal. 2010) ("[o]ne would be hard-pressed to imagine how a trial could proceed in any sort of manageable fashion where so many of the claims must be rebutted by individualized evidence."); *West,*  2009 U.S. Dist. LEXIS 82668 at *19-20 ("[t]he need for individualized inquiries [that would be required] would contravene the basic theory of judicial economy upon which the certification of collective actions is based"). The Eleventh Circuit has followed the same rationale, explaining that "as a practical matter, the availability of defenses to some but not all of the putative class members 'clearly pose[d] significant case management concerns.'"  *Anderson v. Cagles, Inc.*, 488 F.3d 945, 954 (11th Cir. 2007).

Many of the cases relied upon by Plaintiffs are easily distinguishable. For example, in *Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 349 (W.D.N.Y. 2007), the defendant, unlike VZW, did "not oppose plaintiff's motion to conditionally certify a collective action."  Further, in *Clarke v. Convergys Customer Mgmt. Group.*, 370 F. Supp. 2d 601 (S.D. Tex. 2005), the employer presented no evidence of a written policy requiring compensation for pre-shift work. VZW has such evidence, and it is undisputed.

Finally, *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930 (N.D. Ill. 2008); *Burch v. Qwest Comms., Int'l., Inc.*, 500 F. Supp. 2d 1181 (D. Minn. 2007); and *Hens v. Clientlogic Operating Corp.*, 2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006), all involved

employer policies that were quite different than VZW's policies. In those cases, employers maintained general policies on the payment of overtime. *See Russell*, 575 F. Supp. 2d at 935; *Burch*, 500 F. Supp. 2d at 1184; *Hens*, 2006 WL 2795620 at *4. Arguably, such policies were ambiguous as to whether time spent logging on to computers was compensable working time. Here, however, there can be no mistake. VZW policies unmistakably provide that computer log-in time is compensable and must be reported on a timesheet for payment, even if it occurs pre-shift. (Ex. 1-G). Thus, this Court should deny Plaintiff's Motion.

## III.   PLAINTIFFS' PROPOSED NOTICE IS PREMATURE

It would be premature for this Court to rule on the contents of any notice or the manner of issuance at this time, as it has not ruled that notice is even warranted. If this Court were to grant Plaintiffs' motion, VZW requests that the Court institute a process by which all parties would have input into the formulation of the notice and its issuance. That process should require the parties to confer in an effort to draft a notice in a mutually agreeable form, and if they cannot reach an agreement, to submit their disagreement to the Court.  Further, Plaintiffs' requests for telephone numbers are contrary to established law, and should be rejected. *Delgado v. Ortho-McNeil, Inc.*, 2007 WL 2847238, at *3 (C.D. Cal. Aug. 7, 2007); *Parks v. Eastwood Ins. Svcs., Inc.,* 2002 WL 34370244, at *5 (C.D. Cal July 29, 2002); *Houston v. URS Corp.*, 2008 WL 5336143, at *7 n.9 (E.D. Va. Dec. 17, 2008).

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' Motion in its entirety. In the alternative, if this Court were to grant notice – which it should not – the Court should deny Plaintiffs' request for putative class members' telephone numbers and should implement a process by which the parties will meet and confer regarding the contents and distribution of notice.

Dated:  March 4, 2011

   s/ Elaine Rogers Walsh
Elaine Rogers Walsh
  (Georgia Bar No. 003480)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
erogerswalsh@jonesday.com

Stanley Weiner (Ohio 0083382)
Michael M. Michetti (Ohio 0080999)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Brian M. Jorgensen*
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Local Rule 7.1D, I hereby certify that the foregoing

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR**

**CONDITIONAL CLASS CERTIFICATION** has been prepared on a computer

using the Times New Roman font, 14 point, as approved by the Court in Local

Rule 5.1C.

This 4th day of March, 2011.

            s/ Elaine Rogers Walsh
           Georgia Bar No. 003480
           Attorney for Defendant

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone:  (404) 521-3939
Email:  erogerswalsh@jonesday.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 4, 2011, I electronically filed the foregoing

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR**

**CONDITIONAL CLASS CERTIFICATION** with the Clerk of Court using the

CM/ECF system, which will automatically send e-mail notification of such filing

to the following attorneys of record for Plaintiffs:

> John T. Sparks, Sr.
> Michele R. Fisher
> Reena I. Desai

>    s/ Elaine Rogers Walsh
> Georgia Bar No. 003480
> Attorney for Defendant

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Telephone: (404) 521-3939
Email: erogerswalsh@jonesday.com